The opinion of the Court was delivered by
Dargan, Ch.
The questions involved in this case are questions of practice.
Sarah Downs, by proceedings in the Court of Equity, had obtained a decree against her son, William F. Downs, for upwards of $> 15,000. The plaintiff had a judgment against the said William F. Downs, of a junior date. He also had other demands against him, for a considerable amount, arising from partnership transactions; he and Downs having been the joint owners of a cotton and woolen factory. He had filed a bill *423 against Downs for the adjustment of these claims, which was pending at the rendition of the decree, which will be hereafter mentioned. W. F. Downs was insolvent. And the decree of Sarah Downs against him, which was of an older date, and for a large amount, standing in the way of the satisfaction of the plaintiff ’s claims, he filed a bill against Sarah Downs, charging that her decree against William F. Downs, was a fraud upon creditors, and void; and prayed the Court to set it aside on that ground. He made other persons defendants to the cause, on other grounds of relief, in which Sarah Downs was not interested, and had no concern.
There was a fund under the control of the Court, arising from the sale of a tract of land, in which William F. Downs had an estate. The creditors of Downs were called in. The fund aforesaid constituted the only assets, which had not been appropriated. And one of the objects of the proceedings was, to marshal this fund among the creditors of William F. Downs, according to their respective rights.
The case was first heard in 1851, when the presiding Chancellor, holding that the evidence was not sufficient to impeach the bona Jides and validity of the decree which Sarah Downs had obtained against W. F. Downs, dismissed the bill as to her.* Pie ordered new parties to be made, which was done. And he referred the case back to the Commissioner for further investigation as to the questions between, the plaintiff and the representatives of W. F. Downs, and the other parties to the bill. From this decree no appeal was taken.
The case went on, and was again heard in 1852, on the report of the Commissioner and exceptions. In marshaling the fund, the Commissioner applied so much of it as was necessary to the satisfaction of claims admitted, on all hands, to be entitled to precedence. He then applied the residue to the decree in favor of Sarah Downs, which exhausted the fund, without satisfying the decree. This was to the entire exclusion of the claims of the plaintiff and of the other creditors; and was a rightful appli *424 cation, if the decree in favor of Sarah Downs is valid. The plaintiff, and others of the creditors, filed exceptions to the report, which, in substance, may be resolved into the objection, that the decree in favor of Sarah Downs was fraudulent and void, and, therefore, entitled to no part of the fund, as against them. The Chancellor overruled the exceptions, and confirmed the report. And this decree purports to be a final disposition of all the issues growing out of the plaintiff’s bill.
The plaintiff now appeals from the first decree of 1851, on the ground, that the Chancellor should have set aside the decree in favor of Sarah Downs, for fraud.
A preliminary objection is interposed by the counsel for the appellees, which is, that the plaintiff can have no standing in this Court as an appellant, as to any alleged errors in the first decree; in other words, that he has lost his right of appeal, by not bringing it forward in the proper time. If the affirmative of this proposition be true, further consideration on this branch of the case will be unnecessary.
It is not my purpose to enter at large into the discussion of this question. But I will content myself with a simple statement of the result of our deliberations. The opinion of the Court is, that where there is a final decree as to any one of the parties, or any distinct branch of the litigation, so that nothing remains to be adjudged as to that party, or that branch of the litigation, the appeal must be taken within the time, and in the manner prescribed by the rules of Court, or the right of appeal will be lost. It is different, where there has been a decree .adjudging the liability of a party, with a reference to the Commissioner to ascertain the amount due; or where something remains to be done, requiring the further judicial action of the Court. Under these circumstances, the party, supposing himself aggrieved, may appeal at once from the decree, though it be interlocutory; or he may wait the final judgment of the Court, and take his appeal from that, and all the judicial orders and decrees, which preceded and led to the final judgment. This, as a rule of practice, was settled in *425 Brown vs. Postell 4 Rich. Eq. 71; and is not intended to be shaken, or modified by anything herein expressed.
The further opinion of the Court is, that the first decree rendered in this cause was final against the plaintiff as to all matters charged in his bill against Sarah Downs; and that the plaintiff, not having prosecuted his appeal within the time prescribed, the case is not before this Court, and cannot be heard. It is so ordered and decreed.
But the plaintiff, in addition to his attempt to be heard before this Court, by way of appeal from the decree of 1851, has filed in this Court a petition for a rehearing, on the alleged ground of newly discovered testimony in writing, not within his power to have been produced at the trial on which the said decree was rendered. The petition is supported by the affidavit of the plaintiff, and is certified to by counsel. The petition and the exhibits set forth the evidence alleged to have been newly discovered ; and it seems to this Court, from a prima facie view of the facts stated, that if they had been proved on the former trial of the cause, they might have had an important influence on the judgment of the Court.
I apprehend, however, that some of the rules of practice on this subject have been confounded in the present proceeding. This is a petition for a rehearing, which is the proper mode of proceeding before the decree has been rendered. But, after the filing of the decree, when a party wishes to avail himself of newly discovered evidence, the remedy should be sought by an application in the proper form, and properly vouched, for leave to file a bill of review, or a supplemental bill in the nature of a bill of review; the supplemental bill being, perhaps, the most appropriate form of proceeding.
Another very important distinction has been lost sight of in this application. This Court "only entertains appellate jurisdiction. No cause can come before it except by way of appeal. This is familiar to all. By the decision announced in the first part of this decree, the petitioner’s case is not, and cannot come before this Court for its judicial cognizance. The Court is pre- *426 eluded by its organization from entertaining the petition ; which would be, to assume original jurisdiction. From the foregoing views, the dismissal of the petition follows as a matter of course. Here I might stop. To say more, would be, perhaps, to travel out of the record. It may, however, not be amiss for me to intimate, that, in the opinion of the Court, the proper mode of proceeding, under the circumstances alleged in the petition, would be to apply to the Circuit Court for leave to file a supplemental bill, in the nature of a bill of review. The petitioner, if he chooses, may avail himself of this privilege of proceeding in that Court, in such manner as he may be advised. The petition is dismissed.
Johnston, Dunkin and Wardlaw, CC., concurred.
Appeal and petition dismissed„

 That is, so far as it sought to set aside the decree in her favor. — R.